**In re Multidistrict Civil Antitrust Actions Involving ANTIBIOTIC DRUGS.**

**No. 10.**

Judicial Panel on Multidistrict Litigation.

Dec. 2, 1970.

As Amended Dec. 8, 1970.

Before ALFRED P. MURRAH, Chairman, and JOHN MINOR WISDOM, EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER, and

JOSEPH S. LORD, III [*], Judges of the Panel.

## OPINION AND ORDER

### PER CURIAM.

More than one hundred and fifty related civil antitrust actions have been transferred to the Southern District of New York and assigned to Judge Inzer B. Wyatt for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407. In re Antibiotic Drug Litigation, 309 F.Supp. 155 (J.P.M.L.1970), 303 F. Supp. 1056 (J.P.M.L.1969), 301 F.Supp. 1158 (J.P.M.L.1969), 299 F.Supp. 1403 (J.P.M.L.1969), and 295 F.Supp. 1402 (J.P.M.L.1968). All of these actions are to some degree related to the 1958 Federal Trade Commission proceedings and to the 1961 criminal antitrust prosecution which resulted in a conviction later reversed on appeal. United States v. Charles Pfizer & Co., 426 F.2d 32 (2d Cir. 1970).

On September 29, 1970 orders and judgments were filed in sixty-six of these actions approving previously proposed settlements and dismissing them with prejudice. Notices of appeal have been filed in many if not all of these actions. Approximately twenty-eight other actions are in the process of being settled. The remaining fifty-eight cases,[1] many of which seek *class action status,* are not included in the various settlements either because the plaintiffs rejected the settlement offer of, for example, in the *farm cases,*[2] because the settlement offer was not extended to them.

■ On October 2, 1970 the *non-settling* plaintiffs' "National Steering Committee" filed a motion with the Panel for an order *retransferring* all *non-settling cases* previously transferred to the Southern District of New York under § 1407 and transferring all *non-settling* actions filed in the Southern District of New York to the District of Minnesota or to another district, preferably in the West or Midwest. Because of the decision herein denying this request, we do not decide whether such a second transfer of the same cases is within the power of the Panel. The eight grounds for the requested relief can be combined into three:

(a) The burden of administering the *settling cases* and conducting discovery and other pretrial proceedings in the *non-settling cases* coupled with the normal duties imposed on Judge Wyatt as a judge of the Southern District of New York is "entirely too great a task for any one judge."

---

[*] Judge Joseph S. Lord, III, was unable to attend the hearing in this matter but has, with the consent of all parties appearing at the hearing, participated in this decision on the basis of the pleadings and the transcript of the hearing.

1. The number of *settling cases* may be increased by one and the *non-settling cases* decreased by one if the motion in the *French Hospital Case* is granted and that action included in the private hospital settlement.

2. The farm or agricultural cases involve purchases of antibiotic drugs used in animal feed and feed supplements. The following actions are included in this group: *The Anderson Cattle Company Case* transferred from the District of Kansas; the *Balfour, Guthrie Case* transferred from the Northern District of California; the *Burgess Poultry Market Case* transferred from the Western District of Texas; the *Doughboy Industries Case,* the *Hoffert Case,* the *Grange Company Case,* the *Midwest Veterinary Supply Case,* and the *Minnesota Fur Food Case* —all transferred from the District of Minnesota; the *Edwards Bros. Case* transferred from the Eastern District of North Carolina; the *Jack England Case* transferred from the Western District of Arkansas; the *Missouri Farmers Association Case* transferred from the Western District of Missouri; the *Kenneth Murray Company Case,* the *Philips Case* and the *Rutledge Ranch Case*—all transferred from the Northern District of Alabama; the *A. C. Smith Poultry Company Case* transferred from the Northern District of Georgia; the *Sylvan Acres Case* transferred from the Northern District of Illinois; and the *Marshall Durbin Case* transferred from the Middle District of Alabama. Most of these actions were commenced long after the initial transfer order was filed and several were filed earlier this year.

(b) Discovery and other pretrial proceedings in the *non-settling cases* have not proceeded as rapidly as they should have.

(c) Judge Wyatt's approval of the settlement presents "potential barriers to or conflicts with *non-settling* plaintiffs' requirement for full discovery * * *

Not satisfied with having one judge and one court for the *settling cases* and another judge and court for the *non-settling cases*, the States of California, Kansas and North Carolina request that all *non-settling government cases* [3] be assigned to still another judge and presumably another district.

After a complete and careful review of the status of this litigation we have concluded that neither the just and efficient conduct of this massive litigation nor the convenience of the parties and their witnesses would be served by granting the requested relief. We do recognize that this litigation has become too large and too complex to be processed by a single judge and believe that the just and efficient conduct of this litigation would be best served by assigning the non-settling cases to a second judge. With the consent and cooperation of the Chief Judges of the affected courts, Judge Miles Lord of the District of Minnesota has been assigned to the Southern District of New York pursuant to 28 U.S.C. § 292(c) and the *non-settling cases* will be assigned to him for the completion of *coordinated or consolidated pretrial proceedings*.[4]

It might be well to add a few words about the factors which *have not* influenced our decision to assign the *non-settling cases* to another judge. First and foremost this decision reflects no dissatisfaction with the way that Judge Wyatt has handled this litigation. We doubt that any other single judge could have done so well. Certainly no one could have been more conscientious, diligent and scrupulously fair to all parties.

Secondly, we reject the contention raised by the moving plaintiffs that the rulings and comments made by Judge Wyatt in his opinion approving settlement [5] raise "barriers to or conflict with litigating plaintiffs' requirements for full discovery * * *." The precise thrust of this argument is not totally clear. If the claim is that a judge who has approved a settlement (which necessarily involves an assessment of the probability of success) is by that reason alone somehow disqualified from processing the *non-settling cases*, we find it entirely without legal support. Judges are often called upon to make preliminary determinations of the merits of the cause before them, for example in determining motions for restraining orders or preliminary injunctions, and that alone forms no basis for disqualification.

If, on the other hand, the claim is that Judge Wyatt has evidenced a *personal* bias and prejudice toward the *non-settlers*, the charge is wholly unsupported by record and actually repudiated by some of the moving plaintiffs.[6]

---

3. This group includes actions brought by the United States and by California, Hawaii, Kansas, North Carolina, Oregon, Utah, Washington, San Francisco, Los Angeles, and Kansas City, Missouri. With the exception of the United States, all were *invited to join this settlement* and declined to do so.

4. While this particular relief was not requested by any party all were placed on notice that such relief was contemplated for the Panel Hearing Order of October 12, 1970 provided, in part, "that at said hearing and on its own initiative the Panel shall consider the assignment of

any or all of the actions listed on Schedule A to another judge for completion of coordinated or consolidated pretrial proceedings in the Southern District of New York * * *."

5. State of West Virginia v. Chas. Pfizer & Co., 314 F.Supp. 710 (S.D.N.Y.1970).

6. For example, the Attorney General of the State of North Carolina felt it necessary to submit a letter in which he emphasizes "that North Carolina's counsel has at all times been most impressed with the fairness, knowledge, ability, and patience shown to North Carolina's counsel by the Honorable Inzer B. Wyatt at all times

We do believe that this litigation has simply become too massive and burdensome for any one judge to process efficiently and expeditiously. Contrary to the defendant's assertion it is clear to us that the task of administering the settlement has just begun.[7] Supervision of discovery and other pretrial proceedings in the *non-settling cases* will likewise create its own substantial judicial burden.

Turning to the plaintiffs arguments in support of *transfer* to Minnesota we find that most of their points are in reality directed to the proposition that a second judge is needed to handle the *non-settling cases*, a contention with which we now agree. The remaining factors allegedly supporting transfer to the District of Minnesota are:

(1) Several *farm cases* were filed in the District of Minnesota and all plaintiffs in the *farm cases* have indicated their willingness to have all such cases consolidated for trial in Minnesota.

(2) Only six of the fifty-eight *non-settling cases* were filed in the Southern District of New York.

(3) It would be more convenient for *plaintiff's counsel* to travel to Minnesota than to New York City.

(4) The court calendar is more current in Minnesota than in New York.

(5) Two different circuits should be given an opportunity to rule on the validity of the settlement proceedings.

(6) The *plaintiffs* have hired expert witnesses and established a document depository in Minneapolis.

(7) There is no longer a possibility of conflicting class action decisions.

Actually only the first of these reasons gives any real support to the proposition that the District of Minnesota is a more appropriate district for the completion of pretrial proceedings in the *non-settling cases* than is the Southern District of New York.[8] If this were a *new group* of multidistrict litigation it might be that some of these factors could lead the Panel to select a district other than the Southern District of New York. But where, as here, the litigation has for several years had its focal point in one court it would take a much stronger showing than made here to justify retransfer of these cases to another district.

■ There are three factors which compel us to leave these cases in the Southern District of New York. First there is an enormous quantity of relevant documents located in New York City. The files in these cases alone fill a special file room in the clerk's office in the Southern District of New York. More important, the defendants have established a document depository in New York City in which more than 24,000 documents have been deposited.[9] Finally, of course, the files and records in the criminal case are also located in New York City. These factors alone would

---

when North Carolina had any matter pending in Judge Wyatt's court."

7. In response to a similar suggestion during the September 24, 1970 pretrial conference, Judge Wyatt commented *as to the work ahead*: "I think that as far as the settling cases are concerned, it could by no means be said that they are completed * * * but the responsibility still remains with many, many, many problems that I can foresee in the distribution to class members, the proof of claims, the disposal of unclaimed amounts. I can't even predict the number of problems." Transcript, pages 98–99.

8. This argument had sufficient merit for the Panel to ask Judge Miles Lord, the

judge to whom the Minnesota cases were assigned before their transfer to New York, to accept assignment to the Southern District of New York so that all *non-settling cases* could be assigned to him. In this way Judge Lord can conduct pretrial proceeding in New York and can, upon completion of pretrial proceeding, try the *farm cases* in Minnesota.

9. The plaintiffs seem to deprecate the value of this document depository. Since it is being maintained at a substantial expense and inconvenience to the defendant, it should be closed and documents returned if it is no longer needed by the plaintiffs.

preclude the transfer of these cases to any other district in the absence of a strong showing that some other district had a greater nexus with this litigation. No other showing has been made here.

■ Second, when a not dissimilar request was rejected more than a year ago, the Panel observed the difficulties in "discerning the *settling* and *non-settling* parties." In re Antibiotic Drug Litigation, 301 F.Supp. 1158, 1160 (J.P.M.L.1969). It is true that the identity and status of the *settling* and *non-settling cases* are much clearer now than they were a year ago but they are still subject to some further change. For example, plaintiff's joint reply memorandum filed October 22, 1970, points out that counsel for the plaintiff in the *French Hospital Case* has asked to have the case removed from the class of miscellaneous *non-settling cases* and transferred to the group of private hospital and Blue Cross Plan cases which are involved in settlement proceedings. While the number of such transfers might now be small, their problems will be minimized by keeping all cases in the same court while assigned to different judges. Since it now appears that there will be an appeal from the order and judgment approving the settlement, it is possible that all *settling* plaintiffs could become *non-settling* plaintiffs. Should that happen, there can be no doubt that the maintenance of both parts of this litigation in the same court would facilitate their assimilation into the litigating group.

■ A final and most persuasive reason for leaving all actions in the same

district relates to the ever present potential for conflicting class action determination. One pending case, Connors et al. v. Pfizer, et al. is referred to by the defendants as an example of a conflicting class action claim *and* by the National Steering Committee in support of their contention that conflicting class action determinations are no longer possible. As we understand his position,[10] counsel for Connors, although not appealing from the judgment approving the settlement, may continue to press for class action recognition on behalf of either a nationwide or a statewide class both of which unquestionably overlap with *settlement classes.* Counsel for Connors anticipates that the defendant will move to dismiss his class action claims on the basis that the judgment in the *settling cases* bind all members of those classes who did not actually opt out. Connors will then be able to attack collaterally the validity of the entire settlement proceeding, including the validity of notice both with respect to the requirements of Rule 23 and the Constitutional requirements of due process. This he is, of course, entitled to do, but we do not believe that such a collateral attack should be made in another district and another circuit.[11] Where, as here, different judges will have to rule on potentially conflicting and overlapping class action claims, efficient administration of justice demands that, if at all possible, a single court of appeals review these determinations. Nor are we persuaded that the *non-settling* government cases require separate treatment. We are certain that Judge Miles

10. Mr. Scanlon appeared at the hearing in Boston and made a brief statement regarding his class action claims. He also submitted a letter to the Clerk clarifying his position.

11. Counsel is concerned that the Second Circuit may have "prejudged" this issue in reviewing the settlement and "would have a pressure upon them to be consistent in their determination of the

efficacy of the settlement (on collateral attack)." We cannot grant counsel's request that the *non-settling cases* be transferred to another district and circuit so that an *inconsistent* decision can be obtained. One of the purposes of section 1407 is to eliminate "inconsistent judicial treatment." In re Fourth Class Postage Regulation, 298 F.Supp. 1326, 1327 (JPML 1969).

Lord will direct discovery in such a way that pretrial in all *non-settling cases* will proceed expeditiously and efficiently and without delay or duplication.

It is therefore ordered that the motions of the plaintiffs to transfer the *non-settling* actions to another district is denied.

It is further ordered that all *non-settling* actions listed on the attached Schedule A are, with the consent of the Chief Judge of the Southern District of New York and of Judge Inzer B. Wyatt assigned to the Honorable Miles Lord, United States District Judge, for further coordinated or consolidated pretrial proceedings.

## SCHEDULE A

### Southern District of New York

| | |
|---|---|
| The State of California v. Chas. Pfizer & Co., Inc., et al. (N.D.Calif., No. 49044) | Civil Action No. 68 Civ. 4343 |
| City & County of San Francisco v. Chas. Pfizer & Co., Inc., et al. (N.D.Calif., No. 48909) | Civil Action No. 68 Civ. 4274 |
| County of Los Angeles v. Chas. Pfizer & Co., Inc., et al. (N.D.Calif., No. 49670) | Civil Action No. 68 Civ. 4341 |
| State of Hawaii v. Chas. Pfizer & Co., Inc., et al. (D.Hawaii, No. 2935) | Civil Action No. 69 Civ. 776 |
| The State of Kansas, et al. v. Chas. Pfizer & Co., Inc., et al. (D. Kansas, No. T–4404) | Civil Action No. 68 Civ. 4264 |
| Kansas City, Missouri, et al. v. Chas. Pfizer & Co., Inc., et al. (W.D. Mo., No. 17465–2). | Civil Action No. 69 Civ. 2861 |
| The State of North Carolina v. Chas. Pfizer & Co., Inc., et al. (E.D. N.C., No. 2287) | Civil Action No. 69 Civ. 839 |
| State of Utah v. Chas. Pfizer & Co., Inc., et al. (N.D.Cal., No. 50536) | Civil Action No. 69 Civ. 798 |
| The State of Washington v. Chas. Pfizer & Co., Inc., et al. (W.D. Wash., No. 8184) | Civil Action No. 69 Civ. 3194 |
| United States of America v. Chas. Pfizer & Co., Inc., et al. (D.D.C., No. 1966–69) | Civil Action No. 70 Civ. 421 |
| The Anderson Cattle Co., Inc. v. American Cyanamid Co., et al. (D.Kan., No. T–4569) | Civil Action No. 69 Civ. 5032 |
| Balfour, Guthrie & Co., Ltd. v. Chas. Pfizer & Co., Inc., et al. (N.D. Calif., No. 52342) | Civil Action No. 69 Civ. 4909 |
| Burgess Poultry Market, Inc., et al. v. Chas. Pfizer & Co., Inc., et al. (W.D.Tex., No. A–69–CA–108) | Civil Action No. 69 Civ. 4026 |
| Doughboy Industries, Inc., et al. v. American Cyanamid Co., et al. (Minn., No. 4–68–409) | Civil Action No. 69 Civ. 1558 |
| Edwards Brothers Milling Co., Inc. v. Chas. Pfizer & Co., Inc., et al. (E.D.N.C., No. 2372) | Civil Action No. 69 Civ. 3899 |
| Dr. E. J. Hoffert, et al. v. American Cyanamid Co., et al. (Minn., No. 4–69 Civ. 458) | Civil Action No. 70 Civ. 367 |
| Jack England, d/b/a England Feed & Equipment Co., et al. v. Chas. Pfizer & Co., Inc., et al. (W.D.Ark., No. ED–69–C–8) | Civil Action No. 69 Civ. 3772 |
| The Grange Co., et al. v. American Cyanamid Co., et al. (Minn., No. 4–68–411) | Civil Action No. 69 Civ. 1556 |
| Midwest Veterinary Supply, Inc., et al. v. American Cyanamid Co., et al. (Minn., No. 4–69–75) | Civil Action No. 69 Civ. 1557 |
| Minnesota Fur Foods Cooperative, et al. v. American Cyanamid Co., et al. (Minn., No. 4–68–410) | Civil Action No. 69 Civ. 1559 |
| Missouri Farmers Association, Inc., et al. v. Chas. Pfizer & Co., Inc., et al. (W.D.Mo., No. 17640–4) | Civil Action No. 69 Civ. 4261 |
| Kenneth Murray Co. v. Chas. Pfizer & Co., Inc., et al. (N.D.Ala., No. 69–768) | Civil Action No. 69 Civ. 5685 |
| Guy J. Phelps, Jr. v. Chas. Pfizer & Co., Inc., et al. (N.D.Ala., No. 69–767) | Civil Action No. 69 Civ. 5684 |
| Rutledge Ranch v. Chas. Pfizer & Co., Inc., et al. (N.D.Ala., No. 69–766) | Civil Action No. 69 Civ. 5683 |
| A. C. Smith Poultry Co., et al. v. Chas. Pfizer & Co., Inc., et al. (N.D. Ga., No. 1293) | Civil Action No. 69 Civ. 5574 |

| | |
|---|---|
| Sylvan Acres, Inc., et al. v. Chas. Pfizer & Co., Inc., et al. (N.D. Ill., No. 70 C 39) | Civil Action No. 70 Civ. 477 |
| Marshall Durbin Food Corp., et al. v. Chas. Pfizer & Co., Inc., et al. (M.D.Ala., No. 3015–N) | Civil Action No. 70 Civ. 677 |
| Marvin Barkal v. Chas. Pfizer & Co., Inc., et al. (N.D.Ill., No. 69 C 647) | Civil Action No. 69 Civ. 1867 |
| Building Service Union Health & Welfare Trust Fund v. Chas. Pfizer & Co., Inc., et al. (N.D.Calif., No. 51523) | Civil Action No. 69 Civ. 3220 |
| Lester Cronley, et al. v. Chas. Pfizer & Co., Inc., et al. (S.D.Ind., No. IP 69–C–366) | Civil Action No. 69 Civ. 4025 |
| Generic Formulae Inc. v. Chas. Pfizer & Co., Inc. (E.D.N.Y., No. 66 Civ. 640) | Civil Action No. 69 Civ. 1000 |
| Hawaii Medical Service Association v. Chas. Pfizer & Co., Inc., et al. (E.D.Pa., No. 68 Civ 2799) | Civil Action No. 69 Civ. 838 |
| Sidney Hillman Medical Center of the Male Apparel Industry of Philadelphia v. Chas. Pfizer & Co., Inc., et al. (E.D.Pa., No. 68–162) | Civil Action No. 68 Civ. 4321 |
| International Rectifier Corp., et al. v. American Cyanamid Co., et al. (C.D.Calif., No. 69–2484–HP) | Civil Action No. 70 Civ. 180 |
| Kent Pharmaceuticals, Inc. v. Chas. Pfizer & Co., Inc., et al. (E.D.Pa., No. 68–384) | Civil Action No. 68 Civ. 4320 |
| Bernard & Mark Lachman, et al. v. Chas. Pfizer & Co., Inc., et al. (Md., No. 20971) | Civil Action No. 69 Civ. 3522 |
| Ralph Pfau, d/b/a Victor Pharmacy, et al. v. Chas. Pfizer & Co., Inc., et al. (S.D.Ind., No. IP 69–C–367) | Civil Action No. 69 Civ. 4089 |
| Chas. Pfizer & Co., Inc. v. Richlyn Laboratories Inc. (E.D.Pa., No. 42648) | Civil Action No. 69 Civ. 1315 |
| Chas. Pfizer & Co., Inc. v. Zenith Laboratories, Inc., et al. (N.J., No. 936–63) | Civil Action No. 68 Civ. 4235 |
| Teamsters Security Fund of Northern California, Inc. v. Chas. Pfizer & Co., Inc., et al. (N.D.Calif., No. 51010) | Civil Action No. 69 Civ. 1629 |
| The Republic of Vietnam v. Chas. Pfizer & Co., Inc., et al. (N.D.Ill., No. 70 C 279) | Civil Action No. 70 Civ. 877 |
| Carl F. Dodge & Marlea Dodge v. Chas. Pfizer & Co., Inc., et al. (N.D.Ill., No. 70 C 500) | Civil Action No. 70 Civ. 1306 |
| Malcolm-Gregg Co., Inc., et al. v. Chas. Pfizer & Co., Inc., et al. (N.D.Calif., No. C–70–613WTS) | Civil Action No. 70 Civ. 1605 |
| Thrifty Drug Stores Co., Inc., et al. v. Chas. Pfizer & Co., Inc., et al. (N.D.Calif., No. 70–502AAH) | Civil Action No. 70 Civ. 1604 |
| Bernard Kay, et al. v. Chas. Pfizer & Co., Inc., et al. (S.D.Ohio, No. 70–76) | Civil Action No. 70 Civ. 1409 |
| Valley Clerks Trust Fund v. Chas. Pfizer & Co., Inc., et al. (N.D. Calif., No. C–70–1294LHB) | Civil Action No. 70 Civ. 3157 |
| San Francisco Culinary, Bartenders & Service Employees Welfare Fund v. Chas. Pfizer & Co., Inc., et al. (N.D.Calif., No. C–70–1295ACW) | Civil Action No. 70 Civ. 3158 |
| Retail Clerks Local 770 & Food Employers Benefit Fund, et al. v. Chas. Pfizer & Co., Inc., et al. (N.D.Calif., No. C–70–1681ACW) | Civil Action No. 70 Civ. 3738 |
| Bakers Health & Welfare Fund, et al. v. Chas. Pfizer & Co., et al. (N.D.Calif., No. C–70–1680ACW) | Civil Action No. 70 Civ. 3737 |
| Associated Life Insurance Co. v. Chas. Pfizer & Co., Inc., et al. (N.D. Ill., No. 70 C 368) | Civil Action No. 70 Civ. 1074 |
| Richard X. Connors, et al. v. Chas. Pfizer & Co., Inc., et al. (E.D. Va., No. 70 Civ. 70–A) | Civil Action No. 70 Civ. 1073 |
| The State of Oregon v. Chas. Pfizer & Co., Inc., et al. | Civil Action No. 68 Civ. 2370 |
| Hoffa Medical Center v. American Cyanamid Co., et al. | Civil Action No. 69 Civ. 5632 |
| The State of Kuwait v. Chas. Pfizer & Co., Inc., et al. | Civil Action No. 69 Civ. 4091 |
| Edward Swayduck, et al. v. Chas. Pfizer & Co., Inc., et al. | Civil Action No. 69 Civ. 5154 |
| Union Health Center of New York, et al. v. Chas. Pfizer & Co., Inc., et al. | Civil Action No. 69 Civ. 2838 |
| Aetna Life Insurance Co. v. Chas. Pfizer & Co., Inc., et al. | Civil Action No. 69 Civ. 3294 |